```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
             EASTERN DIVISION
```

| | |
|---|---|
| **FBR CAPITAL MARKETS & CO.,**<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>**BLETCHLEY HOTEL AT O'HARE LLC,**<br><br>　　　　　　　　Appellee. | Case No. 13 C 746<br><br>Appeal from Unite4<br>States Bankruptcy Court<br>Northern District of Illinois<br>USBC No. 09 B 30029<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from a grant of summary judgment by the United States Bankruptcy Court for the Northern District of Illinois brought by FBR Capital Markets ("FBR"). For the reasons stated herein, the decision of the Bankruptcy Court is affirmed in part, reversed in part, and remanded.

### I.　BACKGROUND

This case arises out of the bankruptcy of River Road Hotel Partners, LLC and affiliates (the "Debtors") in connection with their ownership of the Intercontinental Hotel at O'Hare Airport. Pursuant to an Engagement Letter (Aug. 13, 2009) and the Bankruptcy Court's Retention Order (Sept. 17, 2009), Debtors retained FBR as a financial advisor. FBR performed the contracted-for financial services: it scrutinized restructuring alternatives, analyzed the financial performance of Debtors' and competing hotels, and

produced investment and management memoranda for potential investors.

In July 2011, a restructuring took place based on a plan proposed by a third party, not by FBR. That plan, the Lenders' Fourth Amended Joint Chapter 11 Plan, created Bletchley Hotel at O'Hare LLC ("Bletchley"), which is before the Court now as Appellee. Bletchley was designated to take an assignment from and title to the Debtors' assets and manage the business while administering all remaining bankruptcy claims against the estates.

For its work, FBR earned a monthly fee and had its expenses reimbursed. The Engagement Letter and Retention Order refer to an additional "Restructuring Fee," to be paid to FBR in the event of "any Restructuring." ROA 165. FBR applied to recover that fee, but Bletchley claimed that FBR was not eligible to receive a Restructuring Fee because the restructuring was based on a third party's plan. Bletchley argued that the contract was unclear, and that parol evidence explained that FBR was not to be paid in the event of a restructuring based on a third party's plan. In particular, the Declaration of David Neff ("Neff"), counsel for Debtors, indicated that the parties understood the Restructuring Fee to be a "contingent fee based on the results of FBR's efforts, like a success fee." ROA 1448. The Bankruptcy Court set the matter for trial.

FBR moved for summary judgment and moved *in limine* to preclude Bletchley's parol evidence. In interpreting the Agreement, the Bankruptcy Court found the Retention Order ambiguous and relied on the challenged Neff Declaration to grant summary judgment *sua sponte* for Bletchley. The Court then denied FBR's motion *in limine* as moot. This appeal followed.

## II. **DISCUSSION**

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders. 28 U.S.C. § 158(a)(1). FBR challenges the Bankruptcy Court's (1) denial of summary judgment for FBR; (2) *sua sponte* grant of summary judgment for Bletchley; (3) use of parol evidence; (4) dismissal of the motion *in limine* as moot; and (5) failure to afford FBR an opportunity to seek compensation under equitable theories.

### A. **Waiver**

Bletchley argues that the bulk of FBR's arguments were not raised before the Bankruptcy Court and thus are waived. Appellee Br. at 14-16. This argument is a nonstarter. FBR objected to the use of parol evidence in its motion *in limine*, ROA 1612, and in both of its summary judgment briefs before the Bankruptcy Court, ROA 1024, 1568. FBR had no formal opportunity to contest the Bankruptcy Court's *sua sponte* grant of summary judgment for Bletchley. FBR has not waived its arguments.

## B. The Summary Judgment Motion

The Bankruptcy Court denied FBR's Motion for Summary Judgment and *sua sponte* granted summary judgment in favor of Bletchley. Those decisions denied FBR the Restructuring Fee it claims it is owed, and now FBR challenges both decisions.

A bankruptcy court's decision to grant or deny summary judgment is reviewed *de novo* by a district court. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). The issue of whether to admit parol evidence is a mixed question of law and fact. A District Court reviews *de novo* a bankruptcy court's resolution of mixed questions of law and fact. *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party, and material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

In Illinois, "[t]he starting point of any contract analysis is the language of the contract itself." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 821 (Ill. 2005). Illinois applies

the four corners rule of contract interpretation, which bars consideration of extrinsic or "parol" evidence when the contract is facially unambiguous and fully integrated. *Air Safety, Inc. v. Teachers Realty Corp.,* 706 N.E.2d 882, 884 (Ill. 1999). Only if the language of the contract is susceptible to more than one meaning may the trier of fact use parol evidence to resolve the ambiguity. *Farm Credit Bank v. Whitlock,* 581 N.E.2d 664, 667 (Ill. 1991).

Here, the contract is the August 13, 2009 Engagement Letter, as explained by the Bankruptcy Court's September 17, 2009 Retention Order. In the Engagement Letter, Debtors agreed to pay a restructuring fee "equal to 1.35% of the aggregate principal amount of any Existing Obligations involved in the Restructuring . . . payable concurrently with the consummation of any Restructuring." ROA 165 ¶ 3(c). The Retention Order authorized Debtors to retain FBR under the terms of the Engagement Letter, but made the payment of a restructuring fee "contingent upon the consummation of a restructuring contemplated by the Engagement Letter." ROA 184 ¶ 4.

The parties dispute whether the restructuring that took place, which was pursuant to a plan submitted not by FBR but by a third party, fits within the contract's category of "any Restructuring." The Engagement Letter defines "Restructuring" as:

> any restructuring, reorganization and/or recapitalization . . . that involves all or a significant portion of the Company's outstanding [obligations] that is achieved,

> without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations. . . .

ROA 163.

Through its reference to "a restructuring contemplated by the Engagement letter," the Retention Order modifies the Engagement Letter and suggests that some restructurings would not be so contemplated. By indicating that some restructurings would be contemplated by the Engagement Letter and others would not, the Retention Order creates an ambiguity regarding which restructurings count. Even though the Engagement Letter is broad, it does not answer that question. Because the documents are ambiguous, the Court can consider extrinsic evidence to determine whether a restructuring pursuant to a third-party's plan would entitle FBR to a Restructuring fee.

When a contract is ambiguous, "its construction is then a question of fact, and parol evidence is admissible to explain and ascertain what the parties intended." *Farm Credit Bank of St. Louis v. Whitlock,* 581 N.E.2d 664, 667 (Ill. 1991). Illinois courts caution against resolving disputed contract language on summary judgment, and favor "the right of a party to present the factual basis of his case to the fact finder." *Id.*

The interpretation of the contract language remains disputed. That dispute is material because it is central to determining whether FBR is entitled to the fee, and genuine because a

reasonable jury could find for either party. For example, a reasonable jury could view all the evidence and find that Bletchley's view was the parties' understanding all along, and FBR is not entitled to a Restructuring Fee based on what transpired. Alternatively, a reasonable jury could discredit the extrinsic evidence and find that, at the time of contracting, the parties intended the broad meaning of "any Restructuring" urged by FBR.

Because there remains a genuine dispute as to a material fact, summary judgment was inappropriate. *See also, Curia v. Nelson,* 587 F.3d 824, 832 (7th Cir. 2009) (reversing grant of summary judgment to allow fact finder to interpret ambiguous contract language). Therefore, the Bankruptcy Court's denial of summary judgment for FBR is affirmed, that Court's *sua sponte* grant of summary judgment for Bletchley is reversed, and this matter is remanded for trial.

### C. Motion *in Limine*

FBR challenges the Bankruptcy Court's dismissal of the motion *in limine* as moot. Because the Court's *sua sponte* grant of summary judgment for Bletchley is reversed, FBR's motion *in limine* is no longer moot. On remand, the Bankruptcy Court can consider that motion in the first instance.

### D. Equitable Remedies

FBR challenges the Bankruptcy Court's dismissal that failed to afford FBR an opportunity to seek compensation under equitable

theories.  With a chance to pursue its contract theory at trial, FBR's equity argument before this Court is moot.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Judgment of the Bankruptcy Court is affirmed in part and reversed in party, and this matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: September 24, 2013